## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, NW, CC-10232<br>Washington, DC 20580<br><br>        Plaintiff,<br><br>   v.<br><br>CORNERSTONE AND COMPANY, LLC,<br>6600 Jurupa Avenue, Suite 216<br>Riverside, CA 92504<br><br>BRANDON LAMBERT, in his individual and<br>corporate capacity,<br>402 Rhodora Heights Road<br>Lake Stevens, WA 98258<br><br>        Defendants. | Case No.<br><br>__UNDER SEAL__ |

### COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission, for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with Defendants' unfair public disclosure of consumers' sensitive personal and financial information.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC is charged, *inter alia,* with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A).

## DEFENDANTS

6.      Defendant Cornerstone and Company, LLC, is a California limited liability company formed in 2010. Its registered business address is 6600 Jurupa Avenue, Suite 216, Riverside, California 92504. At all times material to this Complaint, acting alone or in concert with others, Cornerstone has advertised, marketed, distributed, purchased, or sold portfolios of consumer debt. Cornerstone transacts or has transacted business in this district and throughout the United States.

7.      Defendant Brandon Lambert is or was a manager, managing member, principal, or owner of Cornerstone. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Lambert resides in Lake Stevens, Washington. Defendant Lambert, in connection with the matters alleged herein, transacts or has

2

transacted business in this district and throughout the United States.

## COMMERCE

8.      At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

9.      Defendants are debt brokers.  They purchase and sell portfolios of charged-off consumer debt for eventual collection by third-party debt collectors.

10.      One way that Defendants have sold their debt portfolios is through websites that serve as online marketplaces or clearinghouses for the debt collection and debt brokering industries.  These websites provide a venue for debt sellers and buyers to identify one another and exchange information about debt portfolios they seek to sell or buy.

11.      Although catering to members of the debt collection industry, one particular website used by Defendants is a public website that is readily accessible to anyone with internet access.  There are no passwords or other security methods restricting access to view posts on the website.

12.      This website invites visitors to become members of the site, establish a profile page, and post comments and other information in the website's forums.  Visitors, however, can view and download the website's contents without becoming members.

13.      Generally, sellers post on the website summary information about the portfolios they are offering, such as the type of debt, number of individual debts in the portfolio, the total face value of the debt, general age of the debt, and the number of collection agencies that previously attempted to collect.  In some instances, sellers also post sample portions of their

portfolios, but redact or mask personal identifiers that would disclose a consumer's identity or compromise the consumer's sensitive personal information.  The sellers provide their contact information for interested buyers to obtain further information.  Accordingly, debt sellers can market their portfolios on the website without disclosing consumers' sensitive information.

**Defendants' Posting of Unmasked Consumer Debt Portfolios**

14.     In or about February 2014, Defendant Lambert joined this website.  In his profile, Lambert identified himself as the owner of Defendant Cornerstone and both a buyer and seller of debt.

15.     Since then, Defendants began offering debt portfolios for sale through the website.  Defendants have offered portfolios of credit card and other bank debt and portfolios of debt stemming from payday loans, which are small, short-term, high-interest loans marketed to financially-strapped consumers.

16.     On at least six occasions, Defendants have offered their debt portfolios for sale by posting them on this website in the form of unencrypted, unprotected Excel spreadsheets.  By this means, they have exposed to public view consumers' sensitive personal information.  Since March 2014 alone, Defendants have posted at least 12 portfolios of purported debts on this website, containing the unencrypted, unmasked, sensitive personal information of more than 40,600 consumers.

17.     More specifically, Defendants have offered their debt portfolios by posting messages on the website that have included summary descriptions of their portfolios in the body of the message, and the unencrypted, unprotected portfolios in the form of Excel spreadsheets as attachments to the messages.

18.     In addition to the amount of the consumer's alleged debt, for most consumers, the

4

information on the unprotected Excel spreadsheets also has included, but has not been limited to, the consumer's first or last name; date of birth; address; telephone number(s); employer name; employer or other reference name and contact information; consumer's email address; name of consumer's bank; consumer's full bank account number; and bank routing number.  For one portfolio, the information also has included consumers' driver's license numbers; for another portfolio, it has included the consumers' full credit card account numbers.

19.     Defendants have posted the portfolios in a form that has enabled any visitor to the website to open, view, and download this extremely sensitive consumer information.

20.     The spreadsheets posted by Defendants have included the sensitive personal information of consumers located in all 50 states, the District of Columbia, Puerto Rico, the Virgin Islands, and overseas military bases.  The spreadsheets have included sensitive personal information for at least 150 residents of the District of Columbia.

21.     Traffic counters on the website show that visitors to the website have accessed Defendants' messages that contain consumers' sensitive personal information more than 190 times.

22.     The consumers whose sensitive personal information and purported debts Defendants have revealed would be unlikely to know that Defendants possess, and are openly disclosing, the information.  They therefore cannot protect themselves from the harms and potential harms the disclosures cause, including possible identity theft and concomitant account fraud, invasion of privacy, and job loss.

23.     Defendants' practices also expose consumers to other persons or entities attempting to collect the purported debt unlawfully even though those entities will not have purchased or acquired the authority to collect the debt.  This harms consumers who may end up

paying money, but not receiving an enforceable discharge of the debt or any benefit on their credit report from paying the debt. And, it harms debt collectors who may later legitimately purchase those same debts, by making their collection efforts more difficult or impossible.

24.     Defendants have no business need to disclose consumers' sensitive personal information in such a public and widespread manner.

25.     Defendants could have averted the public disclosure of consumers' sensitive personal information at virtually no cost by redacting the information from the Excel spreadsheets posted on the website, encrypting the information, password-protecting the information, or by offering to make the information available through other secure means outside of the website.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

26.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

27.     Acts or practices are unfair under Section 5 of the FTC Act if they cause, or are likely to cause, substantial injury to consumers that consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### Unfair Disclosure of Consumers' Sensitive Personal Information

28.     In numerous instances, Defendants have publicly disclosed consumers' sensitive personal information without the consumers' knowledge or consent, including, consumers' first or last names, addresses, telephone numbers, email addresses, dates of birth, driver's license numbers, credit card numbers, full bank account and bank routing numbers, employers' names and contact information, the consumers' status as purported debtors, and the amount of each

consumer's purported debt.

29.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

30.     Therefore, Defendants' practices, as described above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and (n).

## CONSUMER INJURY

31.     Consumers have suffered, or are likely to suffer, substantial injury as a result of Defendants' violation of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by the Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

32.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions;

B.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement of ill-gotten monies; and

D.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: August 27, 2014                    Respectfully submitted,

                                          JONATHAN E. NEUCHTERLEIN
                                          General Counsel

                                          SEENA D. GRESSIN (D.C. Bar No. 446068, under
                                          LCvR 83.2(e))
                                          THOMAS J. WIDOR (D.C. Bar No. 490184)
                                          KATHERINE WHITE (under LCvR 83.2(e))
                                          Attorneys
                                          FEDERAL TRADE COMMISSION
                                          600 Pennsylvania Avenue, N.W.
                                          Mailstop CC-10232
                                          Washington, D.C. 20580
                                          Telephone:  (202) 326-2717 (Gressin)
                                          Telephone:  (202) 326-3039 (Widor)
                                          Telephone:  (202) 326-2878 (White)
                                          Facsimile:  (202) 326-3768
                                          Email:  sgressin@ftc.gov, twidor@ftc.gov;
                                          kwhite@ftc.gov